UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 19mj3034-Reid

UNITED STATES OF AMERICA

v.

JOHN JAMES PETERSON
and
BRUNELLA ZUPPONE,

              Defendants.
_____/

## CRIMINAL COVER SHEET

1. Did this matter originate from a matter pending in the Central Region of the United States Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia Valle)?  ___ Yes  ✓ No

2. Did this matter originate from a matter pending in the Northern Region of the United States Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? ___ Yes ✓ No

                Respectfully submitted,

                ARIANA FAJARDO ORSHAN
                UNITED STATES ATTORNEY

BY: _____
      Ricardo A. Del Toro
      ASSISTANT UNITED STATES ATTORNEY
      Florida Bar No.   957585
      99 N.E. 4th Street
      Miami, Florida 33132
      Tel:     305-961-9182
      Fax:    305-536-4675
      Email:  Ricardo.Del.Toro@usdoj.gov

AO 91 (Rev. 08/09) Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Florida

| United States of America | ) |
|---|---|
| v. | ) |
|  | ) Case No. |
| JOHN JAMES PETERSON | ) |
| and | ) |
| BRUNELLA ZUPPONE, | ) |
| *Defendant(s)* | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  Feb 2016 - Oct. 25, 2018   in the county of   Miami-Dade & Broward   in the   Southern   District of   Florida  , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 371; | Conspiracy to Commit Offense Against the United States; and |
| 22 U.S.C. § 2778(c) | Attempt to Illegaly Export Defense Articles Without a License. |

This criminal complaint is based on these facts:
SEE ATTACHED AFFIDAVIT.

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Miguel A. Vilches, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 6/26/2019

_____
*Judge's signature*

City and state:   Miami, Florida     Honorable Lisette M. Reid, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Miguel A. Vilches, Special Agent of Homeland Security Investigations ("HSI"), being duly sworn, hereby state as follows:

## INTRODUCTION

1. I have been a Special Agent with HSI for over sixteen (16) years and during my career I have participated in, and directed numerous criminal investigations involving the illegal exportation of military and defense articles from the United States. I have also received formal training and have extensive on-the-job experience in laws and regulations relating to weapons smuggling and in the international trafficking of defense articles. As a result of my training and experience, I have specific knowledge of the means and methods used by weapons traffickers and weapons-trafficking organizations (hereinafter "WTO") to communicate with each other, to purchase, transport, store and distribute weapons, and to conceal profits generated from those transactions.

2. I know, through training and experience, that: (a) it is common for weapon traffickers to utilize numerous concealment methods within various shipment channels to transport weapons, munitions, and proceeds for the export, sale, and distribution of weapons and munitions; (b) it is common for weapon traffickers to conceal weapons and munitions within freight and utilize shipment consolidators, freight forwards, and commercial carriers (land, sea and air); (c) it is common for weapons traffickers to conceal and comingle weapons and munitions within other shipments to avoid customs and carrier shipment inspections in order to export weapons and munitions, in violation of 18 U.S.C. § 554, smuggling goods from the United States; 13 U.S.C. § 305, failure to file a Shippers Export Declaration; 22 U.S.C. § 2778, illegal export of defense

articles without a license; 18 U.S.C. § 1343, wire fraud; and 18 U.S.C. § 371, conspiracy to commit offense or to defraud United States.

3. The facts alleged in this affidavit are based on my personal knowledge and observations, my training and experience, and information obtained from other law enforcement officers. This affidavit does not include every fact known to me concerning this investigation. I have included only those facts and circumstances that I believe are sufficient to establish probable cause to establish that Brunella ZUPPONE ("ZUPPONE") and John James PETERSON ("PETERSON") committed the offenses of conspiracy and attempt to illegally export from the United States to Argentina defense articles, namely, hundreds of parts for AR-15 assault rifles, without a license, in violation of 18 U.S.C. § 371 and 22 U.S.C. § 2778(c).

## RELEVANT STATUTES

4. The Arms Export Control Act ("AECA") and its attendant regulations, the International Traffic in Arms Regulations ("ITAR") (22 C.F.R. §§ 120-130), require a person to apply for and obtain an export license from the Department of State, Directorate of Defense Trade Controls ("DDTC"), before exporting arms, ammunition, or articles of war, which are all classified as defense articles, from the United States (22 U.S.C. §§ 2778(b)(2) and 2794(3), and 22 C.F.R. § 120.1). It is a crime for anyone to willfully violate any provision of 22 U.S.C. § 2778 or any rule or regulation issued under that section. *See* 22 U.S.C. § 2778(c). Specifically, it is a crime for any exporter willfully to fail to obtain an export license before exporting a defense article to another country. *See* 22 U.S.C. § 2778(c) and 22 C.F.R. § 127.1(a)(1). Pursuant to the ITAR, it is a violation for a person to conspire to export or to cause to be exported any defense article without a license. *See* 22 C.F.R. § 127.1. It is also unlawful for any person to "knowingly or willfully attempt, solicit, cause, or aid, abet, counsel, demand, induce, procure, or permit the

2

commission of any act prohibited by 22 U.S.C. § 2778," or any regulation issued there under. 22 C.F.R. § 127.1(e).

5. In the application for an export license, an exporter is required to state, among other things, the nature of the defense article to be exported, the end recipient of the defense article, and the purpose for which the defense article is intended. The DDTC considers these factors in determining whether the export of the defense article would further the security and foreign policy interests of the United States, or would otherwise affect world peace.

6. The Department of State, with the concurrence of the Department of Defense, designates articles as "defense articles" on the United States Munitions List ("USML"), which are subject to these licensing requirements. *See* 22 C.F.R. § 120.6. No defense article could be exported or otherwise transferred from the United States to a foreign country without prior license or written approval from DDTC. 22 C.F.R. §§ 123.1(a), 127.1(a)(1). The ITAR also prohibited re-exports, transfers, transshipments, and diversions from foreign countries of previously exported defense articles without United States Department of State authorization. 22 C.F.R. § 123.9(a).

7. Title 18, United States Code, Section 371 provides, in relevant part: "[i]f two or more persons conspire either to commit any offense against the United States, or to defraud the United States, or any agency thereof in any manner or for any purpose, and one or more of such persons do any act to effect the object of the conspiracy, each shall be fined under this title or imprisoned not more than five years, or both."

## PROBABLE CAUSE

8. On or about October 8, 2018, two (2) U.S. Postal shipments bearing bill of lading numbers CH051622239US and CH051621953US ("SHIPMENTS") were dropped off at the U.S. Postal Service (USPS) office in Bradenton, Florida. The SHIPMENTS were processed through

3

the United States Postal Service as Priority Mail. On October 9, 2018, United States Customs and Border Protection (CBP) Officers located at Miami Foreign Mail Facility placed the SHIPMENTS on hold for inspection. On or about October 11, 2018, upon delivery of the SHIPMENTS for export out of the Miami, Florida, to Buenos Aires, Argentina, CBP performed an outbound border search of the SHIPMENTS.

9. During the outbound border search, CBP officers discovered identical contents in each of the two SHIPMENTS. The following items were in each SHIPMENT; fifteen (15) AR-15 Bolt Carrier Groups; ten (10) AR-15 Upper Receivers; twenty (20) AR-15 80% Lower Receivers; twenty (20) AR-15 Gas Tubes; ten (10) AR-15 Pistol Grips; ten (10) AR-15 Trigger Kits; ten (10) AR-15 Forward Assist; and five (5) AR-15 Barrels. These assault rifle parts are regulated under ITAR and listed as defense articles in Category I of the USML, thus requiring a Department of State, DDTC, license for export.

10. Information obtained from the bill of lading/USPS Customs Declaration and Dispatch Notice located on the "SHIPMENTS," listed the sender (SHIPPER) as "Michael Nunes" with an address in Bradenton, Florida. These same documents listed the (CONSIGNEE/person to receive the SHIPMENT) as "Alanis Sergio P," later identified as Sergio Pablo ALANIS (hereinafter "ALANIS") with an address in Campana, Buenos Aires Province, Argentina. The description of the SHIPMENTS was listed as "Second Hand Sport Goods" as gifts; with a quantity of "10"; weighing at 43 lbs.; and a value of "$46.00." The U.S. Postal Service collected fees in the amount of $189.40 for each for export out of the U.S. to Argentina.

11. The State Department's DDTC has confirmed that the AR-15 assault rifle parts are regulated by the ITAR, and listed under the USML, Category I. Therefore, the AR-15 rifle parts require a DDTC license for export. The State Department has confirmed that neither ZUPPONE

4

nor PETERSON obtained a DDTC export license for the AR-15 assault rifle parts. Nor did Nunes or ALANIS do so.

12. Video surveillance from the U.S. Post Office located in Bradenton, Florida, at the time of the delivery of the SHIPMENTS revealed that ZUPPONE and PETERSON delivered the SHIPMENTS on October 8, 2018. ZUPPONE paid for the shipment fees in cash.

13. Furthermore, research through government databases revealed over 45 previous shipments related to ZUPPONE and PETERSON dating back to in or around February 2016. The previous shipments from the U.S. also listed Roman RAGUSA ("RAGUSA") and ALANIS amongst others, as consignees in Argentina. The previous shipments were described as: auto parts, bicycle spare parts, optic scopes, and antique revolver, among others. In multiple prior shipments, ZUPPONE's cellular telephone number was used as the contact number for the individual shipping the goods.

14. Further research revealed that PETERSON is married to ZUPPONE. They currently reside in Bradenton, Florida. They previously resided in Pompano Beach, Florida, which has been used multiple times for exports to Argentina. The first such export took place in February 2016.

15. Between October and November 2018, HSI coordinated with Argentine law enforcement and judicial officials an international controlled delivery ("ICD") of one of the SHIPMENTS containing the AR-15 assault rifle parts from the United States to Argentina. The international controlled delivery resulted in the seizure of approximately 189 long arms, 156 handguns, one mortar round, one hand grenade, over 30,000 rounds of assorted caliber ammunition, five vehicles, $110,000 US and the arrest of RAGUSA and other Argentine citizens for violations of foreign law concerning weapons smuggling.

16. On or about October 25, 2018, ZUPPONE and PETERSON once again delivered two (2) packages through U.S. Mail (CH052624908US, CH052624616US) said to contain "Second Hand Sporting Goods" from "Vincent Berry" located in Bradenton, Florida, addressed to Sergio P. ALANIS at the same address as the shipment to RAGUSA in Campana, Argentina. Video footage captured ZUPONNE and PETERSON dropping off and paying for shipping costs for shipments.

17. On or about October 25, 2018, agents seized the following export-controlled items from the shipments: forty (40) AR-15 Trigger Kits with Pistol Grips; fifty (50) AR-15 Muzzle Brakes; six (6) AR-15 Barrels; twenty (20) AR-15 Bolt Carriers; seventy-two (72) AR-15 Magazines; twenty (20) AR-15 Forward Assists; one (1) AR-15 Charging Handle; two (2) AR-15 Carbine Charging Plates; one (1) AR-15 Front Grip; one (1) AR-15 Rear Sight Aperture; two (2) AR-15 Butt Plates; nineteen (19) AR-15 Ejection Port Covers; fifteen (15) AR-15 Gas Tubes.

18. Investigation revealed that on October 18, 2018, United Parcel Service delivered two shipments from a firearms supplier in Fort Worth, Texas, to ZUPPONE at her residence in Bradenton, Florida, containing one hundred (100) AR-15 ammunition magazines. Administrative subpoena returns from the firearms supplier produced two invoices dated October 15, 2018, which stated that ZUPONNE was the recipient of the one-hundred (100) AR-15 magazines that had been shipped to her residence in Bradenton. The October 25, 2018 seizure of two shipments contained in total seventy-two (72) AR-15 magazines.

19. Based on the foregoing, HSI obtained a search warrant of ZUPPONE's and PETERSON's residence located in Bradenton, Florida. On November 8, 2018, HSI executed the search warrant of ZUPPONE's and PETERSON's residence and a subsequent consent search of an off-site storage unit. The search resulted in the seizure of approximately 1,500 AR-15/M-4

6

assault rifle parts and 21 boxes of ammunition. In addition, over a dozen digital media items (including cell phones, laptop computers, removable and other hard drives) were imaged for further analysis. Financial material and other documents were recovered for additional investigation. HSI estimates the amount and types of AR-15/M-4 assault rifle parts seized combined would complete approximately 52 fully functioning assault rifles.

25. Following the searches of the residence and storage unit, HSI agents conducted a voluntary interview of ZUPPONE and PETERSON, both of whom waived their Miranda rights in writing and agreed to speak to HSI Special Agents without an attorney. During the interview, ZUPPONE and PETERSON admitted that they shipped from the United States to Argentina without a license hundreds of AR-15 assault rifle parts and that they provided false information including shipper's names to conceal their involvement in the illegal shipments.

26. Furthermore, ZUPPONE and PETERSON admitted that the AR-15/M4 weapon parts found during the search were going to be smuggled to Argentina through the U.S. Postal Service. ZUPPONE and PETERSON also acknowledged that they had received payment for services to and from co-conspirators through wire transfers, credit card payments and transfers through money service businesses for their role in the conspiracy.

27. Based upon the foregoing, probable cause exists to believe that ZUPPONE and PETERSON did knowingly and willfully conspire and attempted to export from the United States to Argentina, without a license defense articles, namely, hundreds of AR-15 assault rifle parts, in violation of 18 U.S.C. § 371 and 22 U.S.C. § 2778(c).

7

FURTHER AFFIANT SAYETH NAUGHT.

_____
Miguel A. Vilches, Special Agent
Homeland Security Investigations

Sworn and subscribed to me this 26th day
of June 2019.

_____
HON. LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

8